# JAMES PRATT *et al.*

*v.*

# HORATIO O. STONE *et al.*

1. TRUST—*equitable rights under, barred by laches.* Where a party claiming land under a secret trust, on the ground of having paid the purchase money through a brother, to whom a conveyance was made, makes no active assertion of his claim for nineteen years, and gives no notice to others purchasing of his brother, and the purchaser causes a portion of the premises to be platted and laid off into lots, and makes sales, and in the meantime the property increases largely in value, such party, and those claiming under his equity, will be estopped and barred in equity from enforcing the secret trust, by their *laches* and the lapse of time.

2. SAME—*failing to give notice and assert right.* Where the holder of the legal title to land disposes of the same, and the purchaser afterwards brings suit in equity for a specific performance, and one claiming a secret resulting trust fails to repudiate the sale so made by the holder of the legal title, or intervene to protect his rights, and neglects to notify those claiming under such purchaser of his rights or intention to repudiate the sale, it would be inequitable to allow him, and his wife claiming under him, to assert their claim to the land after the lapse of nineteen years from the creation of the secret trust.

3. PURCHASER—*when protected from secret trust.* A party purchasing land, the title coming through one holding the legal title of record, without notice of any secret trust claimed to exist under a verbal agreement with the holder of the legal title, will be protected against the claim under the trust.

APPEAL from the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

This was a bill in chancery by James Pratt and Emily J. Pratt, his wife, against Horatio O. Stone, William Golding, Fanny Reynolds, Charles Hobbs, George Brandt, Charles G. Smith, Berthold Lowenthal, Patrick Coney, Asahel O. Bassett, Julian G. Iverson, Martin O. Head, John N. Ridgely, Leo Silverman, William Kleuger, Henry C. Murly, Hugh H. Edwards, Edward P. Town, Michael McGovern and A. M. Pence. The nature and object of the bill is fully stated in the opinion.

Mr. Jesse O. Norton, for the appellants.

Messrs. Monroe, Bisbee & Gibbs, for the appellees.

Mr. Justice Walker delivered the opinion of the Court:

Appellants filed their bill in chancery in the Cook circuit court, against appellees, to obtain a deed of conveyance for certain real estate in and near to the city of Chicago. The bill charges that, on the 18th day of May, 1852, Stephen Bronson owned, in equity, the property in controversy, and that John Deniston held the legal title for his use; that complainant James Pratt agreed with Bronson for its purchase for $2089, of which $489 was to be paid on the delivery of a deed, the balance to be paid in installments. Pratt made an arrangement with his brother, Amos Pratt, to join him in the purchase. James was to pay the first installment, they to give their joint notes for the balance, and each was to pay one-half.

The bill alleges that James gave to his brother Amos the money to make the cash payment, and the promissory notes signed by him; that Amos completed the purchase, paying the money and delivering the notes, and received from Deniston a conveyance, in his own name.

About the 25th of September, of the same year, Amos, by written agreement, sold the premises to Clement H. DeWolf, for Calvin DeWolf, for the sum of $4050, to be paid in installments. The purchaser was to pay all taxes, and in case of default in payment, Pratt was authorized to declare the instrument void at his option.

In September, 1853, Amos Pratt assigned all of his interest in the agreement between him and DeWolf, to Warren Packer. The assignment was to secure Packer for a loan of $2666.66. The indebtedness was incurred in the purchase of lands from Packer. The papers were left with Brown & Hurd, of Chicago, and if payment was made, the agreement was to be returned to Pratt, but if not, then to be delivered to Packer, and he to be authorized to sell the same at public auction, and

appropriate a thousand dollars to himself, as liquidated damages.

Pratt failed to pay, and the agreement was delivered to Packer, and on the 28th day of January, 1854, he sold the same at public auction, and Horatio O. Stone became the purchaser at $1000. He had previously agreed to bid that sum. Packer, on this sale, transferred all of Pratt's rights to Stone. It is charged that, before he purchased the agreement of Packer, he had purchased of DeWolf the 15-acre tract at $4225, paying $225 in hand, and was to pay the balance to Pratt. On such payments being made, DeWolf was to convey to Stone.

It is charged that, on the 4th of February, 1854, DeWolf conveyed the 15-acre tract, by special warranty deed, to Stone, without payment to Pratt or DeWolf. It is alleged that these proceedings were ineffectual to convey this tract, inasmuch as in the notice of sale by Packer, this tract was described as being in section 24, when it was, in fact, in 34; that on the 26th day of September, 1855, Stone caused this tract to be platted and laid out into lots.

It is also alleged that Amos Pratt, on the 7th of October, 1853, deeded this 15-acre tract to Jeremiah Pratt, stating to him that one-half thereof belonged to James Pratt, and that Jeremiah has at all times since admitted that he holds such rights, and that he held one-half in trust for James.

The bill further alleges that Stone, in December, 1856, filed a bill against Amos and Jeremiah Pratt for a specific performance, but on a hearing the bill was dismissed; that on an appeal from that decree to this court, it was affirmed; that in August, 1861, Clement H. DeWolf, for the benefit of Stone and Calvin DeWolf, as it is alleged, filed a bill for a specific performance against Amos and Jeremiah Pratt, Horatio O. Stone and others, setting forth all of the agreements, sales and conveyances, and praying that the Pratts be required to convey; that on a hearing, the circuit court dismissed the bill; that no appeal was prayed or taken, nor was any writ of error ever sued out of this court, but the attorney for complainant ob-

tained a copy of the record, assigned errors thereon, and filed the same in this court; and the attorney of Jeremiah Pratt and Randall, supposing that DeWolf had sued out a writ of error, joined in the errors assigned on the record; that the court reversed the decree and remanded the cause to the court below. This trial was had in this court at the April term, 1866. The circuit court, on the 21st of January, 1868, rendered a decree granting the relief sought, and ordered the purchase money to be paid into court, a conveyance to be made by the Pratts, and that on their failure to do so, the master make the conveyance. The money was paid into court as required by the decree, and the master in chancery, on the 10th of November of that year, made the deed to Clement H. DeWolf, as required by the decree.

It is alleged that Amos Pratt did not appear in either court, and that he was not served with process from either court. It is alleged that Clement DeWolf did not deposit the money in court, but that it was done by Calvin DeWolf and Stone. The bill alleges that no part of the money thus deposited was withdrawn by complainants, and the knowledge that it was so deposited did not come to them until after this bill was filed.

It is likewise alleged that James Pratt paid all of the purchase money for the land; that he had used $1500 of his wife's money, and, being unable to pay the same, he directed Jeremiah Pratt to convey to her, in payment of that sum. This conveyance was made on July 13, 1865. It charges that Stone and the DeWolfs had notice of appellants' equities, and that appellants were not made parties to the bill filed by Clement H. DeWolf; that Emily H. Pratt, on the 19th of September, 1867, filed a bill in the circuit court against both of the De-Wolfs, and, on a hearing, her title to the tract was confirmed against them and all persons claiming under them; that complainants afterwards, in April, 1869, took possession of the land, but were forcibly expelled therefrom by Stone.

To this bill defendants filed a demurrer, which, on a hearing, was sustained and the bill dismissed, and complainants

appeal to this court, and the case has been argued here on its merits under the demurrer.

The bill in this case was filed on the 3d of July, 1871, over nineteen years after it is claimed by the bill that appellant James Pratt acquired his secret trust in this property. It is only claimed that the trust was created by a verbal arrrangement between Amos and James Pratt; nor was it formally declared in writing or attempted to be executed until the conveyance was made by Jeremiah to Mrs. Pratt, on the 13th day of July, 1865, more than thirteen years after it is claimed to have been raised. The property in the meantime had been conveyed by Amos to Jeremiah by a deed absolute in terms, but it is alleged that it was agreed and understood that one-half belonged to James, and had been so held until Jeremiah conveyed to Mrs. Pratt.

Such a claim, held such a length of time without its active assertion in some manner, must be regarded as stale. It is secret in its nature, and leaves the apparent undisputed title of record in others, and induces the world at large to deal with those in whom the title appears to be vested by the public records, where titles are expected to be found. Here, appellants have stood by and permitted Stone to lay off and plat the land into town lots, as early as in 1853, nearly eighteen years before they exhibited their bill; and as such plats are made with a view to the sale of the property in small sub-divisions, and as we find a very large number of defendants besides Stone, to this bill, it is but a reasonable inference that they have become purchasers from Stone. The bill charges that they claim some interest in the property, or parts thereof, but fails to state in what manner they derive their claim.

Again, in nearly twenty years, property thus situated undergoes vast changes in value, and it would be inequitable to permit an apparent owner to hold such a length of time, the greater portion of which, even if he had notice, under the reasonable supposition that their claim was abandoned. The bill alleges the assertion of ownership in but one instance, and that was, taking possession about two years before the bill was

filed. It does not allege that appellants paid taxes, assessments on the property, or did any but the one act indicative of claim of ownership, and that about seventeen years after it is alleged the trust was created. Stone has been by them permitted to hold the property for this great length of time, and the property has probably risen in value to as many thousands now as it was worth hundreds then. Stone has been deprived of the use of his money a considerable portion of the time, and equity forbids that, under these probable changes, the property should be decreed to them.

If James Pratt paid all of the money for this land, as the bill alleges, he must have had interest enough in the matter to have kept himself informed as to its condition. He must have been fully apprised of the fact that Amos had sold it to DeWolf, and his assignment by which the contract passed to Stone. In fact, it would seem almost impossible to believe he could long remain ignorant of that sale. Again, he must have known of the suit brought by DeWolf to compel a specific performance of the contract, and yet he did not intervene to protect his rights, or to repudiate the sale by Amos to De-Wolf. He nowhere alleges that he ever notified DeWolf or Stone that he had or would repudiate the sale, and it would not be equitable now to permit him to assert the claim for the land; and his wife having taken her equity of him, she must be held bound by his *laches*. She can claim no better right than he held. She is, no doubt, entitled, on the showing of this bill, to the purchase money paid into the court under the decree in the case of DeWolf against Pratt and others.

Nor is there any averment in the bill that the other defendants than Stone acquired their claim with notice of appellants' claim of a trust. If they purchased without notice of this secret trust, only claimed to exist by a verbal agreement, then they would undeniably be protected, in any event, against appellants' claims. But we are clearly of opinion the claim is barred by *laches*, and complainants must be held to be estopped from having the relief sought. We are inclined to think the decree was right, on other grounds, but we regard the case so

plain on the ground of *laches*, that we deem it unnecessary to discuss them.

Perceiving no error in the decree of the court below, it is affirmed.

*Decree affirmed.*